**[This opinion has been published in *Ohio Official Reports* at 84 Ohio St.3d 271.]**

DAYTON BAR ASSOCIATION *v.* BUREN.

[Cite as *Dayton Bar Assn. v. Buren*, 1998-Ohio-552.]

*Attorneys at law—Misconduct—Disbarment—Engaging in continuing course of deceit, misrepresentation, and neglect of duty to clients and bankruptcy court.*

(No. 98-1729—Submitted September 29, 1998—Decided December 30, 1998.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 97-33.

_____

{¶ 1} In December 1997, relator, Dayton Bar Association, filed a seven-count amended complaint charging respondent, Bruce A. Buren of Dayton, Ohio, Attorney Registration No. 0018235, with violating numerous Disciplinary Rules. After personal service of the amended complaint and numerous attempts to contact Buren failed, service was made on the Clerk of the Supreme Court as the agent for Buren in accordance with Gov.Bar R. V(11)(B). When Buren did not answer or otherwise plead to the amended complaint, relator filed a motion for default judgment under Gov.Bar R. V(6)(F).

{¶ 2} Based on the amended complaint and the affidavits and deposition attached to relator's motion for default judgment, a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board") made the following findings of fact and conclusions of law.

{¶ 3} In January 1992, Buren filed a bankruptcy petition on behalf of Unified Concepts, Inc. ("Unified"). Under Section 330, Title 11, U.S.Code, Buren was required to fully disclose to the bankruptcy court and all creditors of Unified the amount of attorney fees that had been paid in connection with the bankruptcy proceeding. In violation of the foregoing statute, Buren disclosed to the bankruptcy

court that he had been paid $1,500 in attorney fees, although he had actually been paid $6,000 by February 1992.

{¶ 4} Shortly after filing the bankruptcy petition for Unified, Buren advised the primary shareholder of Unified that Unified's business could be continued outside bankruptcy by incorporating a new business named Silkolor, Inc. ("Silkolor"). Buren represented Unified's shareholders in incorporating Silkolor and recommended that Silkolor purchase Unified's assets out of bankruptcy under a secured party sale from Society Bank after Unified surrendered the assets to the bank. Society Bank refused to participate in the proposed sale.

{¶ 5} Silkolor operated its business with the same equipment and customers as Unified, generating revenues that were diverted from Unified's bankruptcy proceeding. There was no evidence that Silkolor operated the business with either the consent of Unified's creditors or the approval of the bankruptcy court. A portion of Silkolor's revenues was used to pay Buren for legal services he provided to Silkolor and Unified both before and after the bankruptcy filing.

{¶ 6} The bankruptcy trustee in Unified's case discovered the improprieties and filed an adversary proceeding against Buren in the bankruptcy court. The trustee obtained a default judgment against Buren for over $16,000 in attorney fees taken from Unified without disclosure or bankruptcy court approval.

{¶ 7} The panel concluded that Buren's actions relating to the bankruptcy case violated DR 1-102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 1-102(A)(5) (engaging in conduct prejudicial to the administration of justice), 1-102(A)(6) (engaging in any other conduct adversely reflecting on his fitness to practice law), 2-106(A) (entering into an agreement for, charging, or collecting an illegal or clearly excessive fee), 7-102(A)(3) (concealing or knowingly failing to disclose that which he is required by law to reveal), 7-102(A)(5) (knowingly making a false statement of law or fact), 7-102(A)(7) (counseling or assisting his client in conduct that the lawyer knows to be illegal or

2

fraudulent), and 7-102(A)(8) (knowingly engaging in other illegal conduct or conduct contrary to a Disciplinary Rule).

{¶ 8} In November 1994, Buren established the law firm of Bruce A. Buren & Associates, L.P.A., in which he was the sole shareholder. Buren employed Isabel Suarez as the managing associate attorney for the firm. As part of her employment contract, Suarez, as the attorney for personal injury claimants, assigned the proceeds from twelve personal injury cases she had pending at the time of her hiring. From December 1984 through February 1995, Suarez settled these cases and deposited the settlement proceeds in the firm's IOLTA trust account. Suarez diverted over $28,000 in trust funds that were to pay healthcare providers' claims for medical services to the personal injury claimants. She transferred the money to the firm's operating account, and the funds were used to pay firm debts.

{¶ 9} In a disciplinary case brought against Suarez, she testified that she transferred the funds to the firm's operating account at Buren's direction. *Disciplinary Counsel v. Suarez* (1998), 84 Ohio St.3d 4, 701 N.E.2d 683. According to Suarez, Buren was also involved in a check-kiting scheme and had applied for a credit card using her name as a co-applicant without her authorization. Buren testified in the disciplinary case that he never advised Suarez to transfer the money and that he fired Suarez upon discovering the illegal diversion of trust funds. But Buren never replaced the money in the trust account and never reimbursed the medical providers for services rendered to the personal injury claimants.

{¶ 10} The panel concluded that Buren's actions concerning the diversion of money from his law firm's IOLTA trust account violated DR 9-102(A) (failing to deposit funds of a client in a bank account where no funds belonging to the lawyer or law firm are deposited), 9-109(B)(3) (failing to maintain complete records of funds coming into his possession and failing to render an appropriate accounting regarding them), and 9-102(B)(4) (failing to promptly pay to client funds in his possession to which the client is entitled to receive).

**{¶ 11}** Patricia Segal paid Buren a retainer of $750 to probate the estate of Virgil Lee Mullins. Shortly thereafter, Buren vacated his office and disconnected his telephone without leaving any forwarding address. Segal eventually hired different counsel to provide the services for which Buren had been paid.

**{¶ 12}** The panel concluded that Buren violated DR 6-101(A)(3) (neglecting a legal matter entrusted to him) by not providing Segal with the requested services. The panel further concluded that Buren violated Gov.Bar R. V(4)(G) (failing to cooperate in a disciplinary investigation). The panel recommended that Buren be disbarred from the practice of law.

**{¶ 13}** The board adopted the findings, conclusions, and recommendation of the panel, and further recommended that the costs of the proceedings be taxed to Buren.

—————————

*Certo & Larson* and *Peter R. Certo, Jr.*, for relator.

—————————

***Per Curiam.***

**{¶ 14}** We concur with the findings, conclusions, and recommendation of the board. Buren engaged in a continuing course of deceit, misrepresentation, and neglect of duty to his clients and the bankruptcy court. In addition, Buren has failed to cooperate with disciplinary proceedings. Under these circumstances, disbarment is the appropriate sanction. See, *e.g., Cuyahoga Cty. Bar Assn. v. Churilla* (1997), 78 Ohio St.3d 348, 350, 678 N.E.2d 515, 516-517; *Cincinnati Bar Assn. v. Brown* (1997), 78 Ohio St.3d 345, 678 N.E.2d 513. Buren is hereby disbarred from the practice of law in Ohio. Costs taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

—————————